IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| BERNICE OKONIHA, et al., | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. GLR-25-3617 |
| UPSCALE MANAGEMENT SERVICES, LLC, et al., | * | |
| | * | |
| Defendants. | | |

\*\*\*

## MEMORANDUM OPINION

THIS MATTER is before the Court on Plaintiffs Bernice Okoniha, Dianne Ouzts, Fatmata Koroma, Hannah Prempeh, and Kelley Little's (collectively, "Plaintiffs") Motion for Default Judgment (ECF No. 18) and Motion for Attorneys' Fees and Costs (ECF No. 19). The Motions are ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2025). For the reasons set forth below, the Court will grant the Motion for Default Judgment and grant in part and deny in part the Motion for Attorneys' Fees and Costs.

## I.   BACKGROUND

### A.   Factual Background

Defendants Upscale Management Services, LLC ("Upscale") and Oyindamola Cole—the owner, operator, and manager of Upscale—(together, "Defendants") hired Plaintiffs to work as healthcare aides at various assisted living facilities in Maryland. (Compl. ¶¶ 1, 15, 17, ECF No. 1). Plaintiffs all worked for Defendants from mid- to late-2024 until early 2025: Okoniha from about July 2024 to May 2025; Little from January

2025 to May 2025; Ouzts from January 2025 to May 2025; Prempeh from the summer of 2024 to May 2025; and Koroma from March 2025 to May 2025. (Id. ¶¶ 4, 6, 8, 10, 11). Plaintiffs all worked for $45 an hour and, as non-salaried employees, they were eligible to receive time-and-a-half pay for every hour worked beyond forty hours per week. (Pls.' Mem. Supp. Mot. Default J. Against All Defs. ["Mot. Default J."] at 3, ECF No. 18-1).[1]

Plaintiffs allege that Defendants have failed to pay them for all their "straight time" hours (i.e., standard hours worked up to forty hours per week) and overtime hours worked. (Compl. ¶¶ 41–60, 78–117). Plaintiffs allege that Defendants have access to their timesheets and, therefore, know the hours that Plaintiffs worked; that Defendants have failed to pay Plaintiffs accordingly; that Plaintiffs have made demands for payment of owed wages to no avail; and that Defendants have "no lawful reason or lawful excuse" for failing to pay Plaintiffs what they are owed. (Id. ¶¶ 40–45, 51; Mot. Default J. at 3)

**B.**     **Procedural History**

Plaintiffs filed a Complaint in this Court on November 4, 2025, alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206, 207 (Counts I and II); the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. §§ 3-401, et seq. (Counts III and IV); and the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. Empl. §§ 3-502, 3-507.2(a) (Count V). (Compl. ¶¶ 78– 117). Plaintiffs also allege breach of contract (Count VI) and unjust enrichment (Count VII). (Id. ¶¶ 118–35). Defendants did not file a timely response to the Complaint.

---

[1] Unless otherwise noted, citations to page numbers refer to the pagination assigned by the Court's Case Management/Electronic Files ("CM/ECF") system.

On December 17, 2025 and January 7, 2026, Plaintiffs filed Motions for Clerk's Entry of Default as to Upscale and Cole, respectively. (ECF Nos. 10, 11). The Clerk issued Orders and Notices of Default as to each Defendant on January 28, 2026. (ECF Nos. 12–15). The Court then ordered Plaintiffs to file a motion for default judgment or show cause why such motion would be inappropriate. (ECF No. 16). Plaintiffs filed the instant Motion for Default Judgment Against All Defendants on February 10, 2026. (ECF No. 18). Plaintiffs also filed a Motion for Attorneys' Fees and Costs on April 1, 2026. (ECF No. 19). To date, Defendants have not responded to either Motion.

## II.   DISCUSSION

### A.   <u>**Motion for Default Judgment**</u>

Turning first to Plaintiffs' Motion for Default Judgment, Rule 55(a) of the Federal Rules of Civil Procedure provides that, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed.R.Civ.P. 55(a). According to Rule 55(b), the court may enter a default judgment against the defendant if, after entry of default, the plaintiff's complaint does not specify a "sum certain" amount of damages. Fed.R.Civ.P. 55(b)(1)–(2). In considering a motion for default judgment, the court accepts as true the well-pleaded factual allegations in the complaint as to liability. See <u>Ryan v. Homecomings Fin. Network</u>, 253 F.3d 778, 780–81 (4th Cir. 2001). But "[l]iability is not deemed established simply because of the default . . . [and] the court, in its discretion, may require some proof of the facts that must be established in order to

3

determine liability." 10A Wright & Miller's Federal Practice and Procedure § 2688.1 (4th ed. 2025); see also Ryan, 253 F.3d at 780–81.

If the court finds that liability is established, then it must turn to the determination of damages. See Ryan, 253 F.3d at 780–81. "The court must make an independent determination regarding damages and cannot accept as true factual allegation of damages." Int'l Painters & Allied Trades Indus. Pension Fund v. Cap. Restoration & Painting Co., 919 F.Supp.2d 680, 684 (D.Md 2013). Rule 54(c) of the Federal Rules of Civil Procedure limits the type and amount of damages that may be entered because of a party's default. See Fed.R.Civ.P. 54(c). Where a complaint does not specify an amount, "the court is required to make an independent determination of the sum to be awarded." Adkins v. Teseo, 180 F.Supp.2d 15, 17 (D.D.C. 2001). In doing so, "[i]t is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the Plaintiff is lawfully entitled to recover and to give judgment accordingly." Pope v. United States, 323 U.S. 1, 12 (1944).

For the reasons stated below, Plaintiffs are entitled to default judgment. The Court first reviews the allegations supporting the merits of Plaintiffs' claims and then determines the appropriate damages. In determining damages, this Court finds that no evidentiary hearing is necessary and instead relies on the declarations and other evidence in the record to determine the appropriate sum. See e.g., Monge v. Portofino Ristorante, 751 F.Supp.2d 789, 795 (D.Md. 2010) ("[T]he Court may only award damages without a hearing if the record supports the damages requested.").

### 1.     Liability[2]

Plaintiffs allege that Defendants are liable for violations of the FLSA, MWHL, and MWPCL for failing to pay them straight time and overtime wages.[3] (Mot. Default J. at 1). For the reasons stated below, the Court agrees that Defendants are liable for these violations.

The FLSA provides that, for any hours worked more than forty hours per week, an employee shall "receive[ ] compensation for his employment . . . at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). Similarly, the MWHL requires employers to pay their employees an overtime wage of at least one-and-half times their usual hourly wage for work they perform more than forty hours per week. Md. Code Ann., Lab. & Empl. §§ 3-415(a), 3-420(a). "The requirements of the MWHL 'mirror' those of the FLSA and claims under both statutes therefore stand or fall together." Orellana v. Cienna Props., LLC, No. JKB-11-2515, 2012 WL 203421, at

---

[2] "Defendants were served with the Complaint but have not responded. Accordingly, all of Plaintiffs' allegations as to liability are deemed admitted." Castillo v. D & P Pro. Servs., Inc., No. DKC-14-1992, 2015 WL 4068531, at *3 (D.Md. July 2, 2015).

[3] Plaintiffs do not argue for default judgment as to the breach of contract and unjust enrichment claims. (See generally Mot. Default J.). Plaintiffs also mention in the Motion for Attorneys' Fees and Costs that they pleaded the breach of contract and unjust enrichment claims in the alternative and that damages awarded under the FLSA, MWHL, and MWPCL claims "meet or exceed those available to Plaintiffs under" the breach of contract and unjust enrichment counts. (Mem. Supp. Mot. Att'ys' Fees & Costs at 10 n.3, ECF No. 19-1). The Court, therefore, will deem the breach of contract and unjust enrichment claims abandoned. See Glob. One Fin., Inc. v. Back Pain Inst. of Cleveland, LLC, No. 1:07-CV-1004-JOF, 2008 WL 11417110, at *1 n.1 (N.D.Ga. June 10, 2008) (finding claims not addressed in motion for default judgment to be abandoned); Muppets Studio, LLC v. Pacheco, No. CV 12-7303 JGB (FFMx), 2013 WL 2456617, at *2 (C.D.Cal. June 6, 2013) (same).

*5 (D.Md. Jan. 23, 2012) (quoting Turner v. Human Genome Sci., Inc., 292 F.Supp.2d 738, 744 (D.Md. 2003)). Additionally, the MWPCL "requires an employer to pay its employees regularly while employed, and in full at the termination of employment." Castillo v. D & P Pro. Servs., Inc., No. DKC-14-1992, 2015 WL 4068531, at *4 (D.Md. 2015) (quoting Peters v. Early Healthcare Giver, Inc., 97 A.3d 621, 624–25 (Md. 2014)).

Liability under the FLSA, MWHL, and MWPCL turns on whether the defendant is an "employer" as defined by those statutes. Avila v. Caring Hearts & Hands Assisted Living & Elder Care, LLC, No. TDC-15-3943, 2016 WL 4083365, at *3 (D.Md. Aug. 1, 2016). The definition of an employer is functionally identical under these three statutes. Id.; see also 29 U.S.C. § 203(d) (FLSA defining employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee"); Md. Code Ann., Lab. & Empl. § 3-401 (MWHL defining employer as any "person who acts directly or indirectly in the interest of another employer with an employee"); id. § 3-501(b) (MWPCL defining employer as "any person who employs an individual in the State or a successor of the person"). To determine whether an individual defendant is an employer under the FLSA, MWHL, and MWPCL, courts apply the "economic reality" test. Avila, 2016 WL 4083365, at *3 (citations omitted). With this test, "courts consider whether the employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Id. But "[n]o one factor is dispositive." Id.

Here, accepting the allegations as true, Plaintiffs' have established that both Defendants were Plaintiffs' employers within the meaning of the FLSA, MWHL, and MWPCL. Specifically, Plaintiffs allege that, as a condition to their employment, they signed multiple documents that identified them as "employees" and Upscale as their "employer"; that Cole is the sole owner, operator, and manager of Upscale; that Cole hired Plaintiffs, set the terms and conditions of their employment and the work they performed, and set their schedules; and that Cole "was responsible for paying or not paying Plaintiffs." (Compl. ¶¶ 17–35). Based on these allegations, Plaintiffs have established that both Defendants were their employers under the FLSA, MWHL, and MWPCL and, as a result, are jointly and severally liable for any damages awarded to Plaintiffs. See, e.g., Sanabria v. Cocody, Inc., No. DKC-16-0365, 2017 WL 3022990, at *3 (D.Md. July 17, 2017) (finding corporate and individual defendants jointly and severally liable as employers under FLSA, MWHL, and MWPCL); Cruz v. Home & Garden Concepts, LLC, No. GJH-15-204, 2016 WL 3679139, at *7, 9 (D.Md. July 12, 2016) (same).

As to any wages owed, an employee bears "the burden of establishing the hours he claims to have worked . . . ." McLaughlin v. Murphy, 436 F.Supp.2d 732, 737 (D.Md. 2005). If the defendant-employer does not produce time sheets, the employee may prove hours worked by "produc[ing] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Butler v. DirectSAT USA, LLC, 47 F.Supp.3d 300, 309 (D.Md. 2014). Thus, in the absence of an exact record of hours "a prima facie case can be made through an employee's testimony giving his recollection of hours worked." Hurd v. NDL, Inc., No. CCB-11-1944, 2012 WL 642425, at *4 (D.Md.

Feb. 27, 2012) (citation modified) (quoting <u>Donovan v. Kentwood Dev. Co., Inc.</u>, 549 F.Supp. 480, 485 (D.Md. 1982)).

Here, Plaintiffs have established through their uncontested allegations in the Complaint, their declarations, and their timesheets that they were employees of Defendants, that they worked for $45 an hour, and that they were non-salaried employees who were eligible to receive overtime pay under the FLSA and MWHL. (Mot. Default J. at 3, 12). Plaintiffs allege that they "were not paid at all by Defendants for several pay periods" and that they "regularly worked more than 40 hours in a week" but have not received overtime wages for all overtime hours worked. (Compl. ¶¶ 51–52, 88; Mot. Default J. at 3). Based on the allegations in the Complaint, Plaintiffs' declarations, and the attached timesheet exhibits, Plaintiffs have established that they each worked the following hours for which they have yet to be paid:

- Okoniha – 344 hours between April 13, 2025 and May 18, 2025

- Little – 213 hours between April 13, 2025 and May 23, 2025[4]

- Ouzts – 55.5 hours between April 6, 2025 and April 12, 2025

- Prempeh – 120.5 hours between April 10, 2025 and May 9, 2025

- Koroma – 124.75 hours between April 9, 2025 and May 15, 2025[5]

---

[4] In the straight time hours chart that Little includes in her declaration, she alleges that she worked 9 hours on April 21, 2025, (Little Decl. ¶ 35), but the timesheets she provides show that she worked 8 hours, (<u>id.</u> at 23). The Court, therefore, will reduce Ouzts's straight time hours from 214 to 213.

[5] In the straight time hours chart that Koroma includes in her declaration, she alleges that she worked 9.5 hours on April 9, 2025; 10.5 hours on April 18, 2025; 6.5 hours on April 29, 2025; 8 hours on May 7, 2025; and 8 hours on May 14, 2025. (Koroma Decl. ¶ 35). The timesheets she provides, however, show that she worked 10, 10, 7, and 8.5 hours

(Compl. ¶¶ 46–50; Okoniha Decl. ¶ 35, ECF No. 18-2; Ouzts Decl. ¶ 35, ECF No. 18-3; Koroma Decl. ¶ 35, ECF No. 18-4; Prempeh Decl. ¶ 35, ECF No. 18-5; Little Decl. ¶ 35, ECF No. 18-6). Plaintiffs also have established that they worked the following overtime hours for which they have yet to be paid:

- Okoniha – 368 hours between January 12, 2024 and May 18, 2025[6]

- Little – 128 hours between April 9, 2025 and May 17, 2025[7]

- Ouzts – 87 hours between February 9, 2025 and July 13, 2025

- Prempeh – 51.75 hours between October 13, 2024 and March 9, 2025[8]

- Koroma – 1.75 hours between April 13, 2025 and April 19, 2025

(Okoniha Decl. ¶ 36; Ouzts Decl. ¶ 36; Koroma Decl. ¶ 36; Prempeh Decl. ¶ 36; Little Decl. ¶ 36).

---

on April 9, 18, 29, and May 7. (Id. at 13, 19, 24, 28). For May 14, the timesheet says, "2 hour cancellation fee," but no hours worked. (Id. at 31). The Court, therefore, will reduce Koroma's straight time hours from 131.75 to 124.75.

[6] Rather than 64 hours between April 13 and 19, 2025, Okoniha's timesheets show 48 hours of overtime work. (Okoniha Decl. ¶ 36; id. at 24). Between May 12 and 18, 2025, rather than 40 hours, Okoniha's timesheets show 56 hours of overtime work. (Id. ¶ 36; id. at 31). These errors cancel each other out, though, so the total hours reported remains the same.

[7] Little's timesheets contradict her allegations as to the overtime hours she worked between February 9, 2025 and May 17, 2025; it appears that her 30-minute breaks were double-counted. (Little Decl. ¶ 36; id. at 10–27). The Court, therefore, will increase Little's total overtime hours from 92.5 to 128.

[8] Prempeh's timesheets contradict her allegations that she worked 7 and 9 overtime hours for the December 29, 2024 to January 4, 2025 and the February 23, 2025 to March 1, 2025 pay periods, respectively. (Prempeh Decl. ¶ 36). The records indicate that she worked 9.5 and 11.5 overtime hours during those periods. (Id. at 27, 36). The Court, therefore, will increase Prempeh's overtime hours from 46.75 to 51.75.

The Court finds Plaintiffs uncontested allegations and timesheets sufficient and credible for the purpose of establishing liability. See Turner v. Human Genome Science, 292 F.Supp.2d 738, 748 (D.Md. 2003) (stating that a plaintiff's testimony on unpaid wages is sufficient to make a prima facie showing of unpaid wages); Albanez v. Breeding Constr., Inc., No. DKC-14-1813, 2016 WL 894617, at *2, 4 (D.Md. Mar. 9, 2016) (finding plaintiff established through billing sheets and affidavit that defendants are liable to plaintiff under the FLSA, MWHL, and MWPCL); Villanueva v. D&JJ, Inc., No. PWG-20-556, 2022 WL 4316655, at *3 (D.Md. Sept. 19, 2022) (finding plaintiffs declarations and Excel spreadsheets that defendants are liable to plaintiffs under the FLSA, MWHL, MWPCL, and MPWS). Thus, Plaintiffs have established that Defendants are liable under the FLSA, MWHL, and MWPCL.

### 2.    Damages

The Court next turns to damages. Plaintiffs allege that they are entitled to unpaid straight time and overtime wages, and they seek treble damages under the MWPCL. (Mot. Default J. at 12–15).

To calculate damages for "unpaid regular time recoverable under the MWPCL, the Court takes the hours worked without compensation and multiplies that figure by the employee's base hourly rate." Mata v. G.O. Contractors Grp., Ltd., No. TDC-14-3287, 2015 WL 6674650, at *5 (D.Md. Oct. 29, 2015). Here, Plaintiffs provide charts showing the hours they recall working multiplied by their straight time wage, $45 per hour. (Okoniha Decl. ¶ 35; Ouzts Decl. ¶ 35; Koroma Decl. ¶ 35; Prempeh Decl. ¶ 35; Little Decl. ¶ 35). Although Plaintiffs do not provide timesheets for every hour reported, the

10

Court finds the declarations sufficient to award damages for the hours Plaintiffs claim to have worked, with some minor adjustments for any hours that differ from the timesheets provided. Thus, after considering Plaintiffs' declarations and attached timesheets, and making a few minor adjustments to account for any errors, (see footnotes 4–5 of this Opinion), the Court finds that Plaintiffs are entitled to the following amounts in unpaid straight time wages:

- Okoniha – 344 hours x $45/hour = $15,480

- Little – 213 hours x $45/hour = $9,585

- Ouzts – 55.5 hours x $45/hour = $2,497.50

- Prempeh – 120.5 hours x $45/hour = $5,422.50

- Koroma – 124.75 hours x $45/hour = $5,613.75

(Okoniha Decl. ¶ 35; Ouzts Decl. ¶ 35; Koroma Decl. ¶ 35; Prempeh Decl. ¶ 35; Little Decl. ¶ 35).

To calculate unpaid overtime wages under the FLSA and the MWHL, the Court takes the undercompensated hours and multiplies that figure by one-half the employee's base hourly rate, the difference between the mandated overtime rate and the employee's regular rate. See 29 U.S.C. § 207; Md. Code Ann., Lab. & Empl. § 3-427. Here, as with their straight time hours, Plaintiffs provide charts indicating the overtime hours they recall working multiplied by half their straight time wage, $22.50 per hour. (Okoniha Decl. ¶ 36; Ouzts Decl. ¶ 36; Koroma Decl. ¶ 36; Prempeh Decl. ¶ 36; Little Decl. ¶ 36). Again, the Court has made some adjustments to the overtime hours worked and resulting unpaid wages due to differences between Plaintiffs' declarations and timesheets. (See footnotes

11

6–8 of this Opinion). Overall, the Court finds that Plaintiffs are entitled to the following amounts in unpaid overtime wages:

- Okoniha – 368 hours x $22.50/hour = $8,280

- Little – 128 hours x $22.50/hour = $2,880

- Ouzts – 87 hours x $22.50/hour = $1,957.50[9]

- Prempeh – 51.75 hours x $22.50/hour = $1,164.37

- Koroma – 1.75 hours x $22.50/hour = $39.38

(Okoniha Decl. ¶ 36; Ouzts Decl. ¶ 36; Koroma Decl. ¶ 36; Prempeh Decl. ¶ 36; Little Decl. ¶ 36); see Adkins, 180 F.Supp.2d at 17 (noting that except where the amount of damages is certain, the court must make an independent determination of damages in reviewing a motion for default judgment and may rely on detailed affidavits or documentary evidence to determine the appropriate sum); Albanez, 2016 WL 894617, at *2 ("[I]f the employer does not successfully rebut the employee's statement [regarding wages owed], '[t]he Court may award damages based on Plaintiffs' testimony even though the amounts claimed are only approximated and not perfectly accurate." (quoting Lopez v. Lawns 'R' Us, No. DKC-07-2979, 2008 WL 2227353, at *3 (D.Md. May 23, 2008))).

Plaintiffs also seek treble damages under the MWPCL. (Mot. Default J. at 14–15). The MWPCL states that if "a court finds that an employer withheld the wage of an employee in violation of this subtitle and not as a result of a bona fide dispute, the court may award the employee an amount not exceeding 3 times the wage . . . ." Md. Code. Ann.,

---

[9] This amount is one cent higher than that reported in Ouzts' declaration due to a minor rounding error. (See Ouzts Decl. ¶ 36)

Lab. & Empl. § 3-507.2(b). "These significantly enhanced damages serve a punitive purpose and also compensate plaintiffs for any consequential damages incurred as a result of being unpaid or underpaid." Mata, 2015 WL 6674650, at *5. The employer has the burden of establishing that they withheld an employee's wages based on a bona fide dispute, i.e., "a legitimate dispute over the validity of the claim or the amount that is owing where the employer has a good faith basis for refusing an employee's claim for unpaid wages." Avila v. Marlin Lighting LLC, No. PWG-22-49, 2022 WL 17094583, at *4 (D.Md. Nov. 21, 2022) (citation modified). If a defendant fails to meet this burden, the Court then "may consider significant consequences of being underpaid, such as being unable to meet weekly or monthly obligations, ranging from embarrassment, to late charges, to repossessions, and eviction," to determine whether treble damages are appropriate. Id. (citation modified).

Here, Plaintiffs allege that there is no bona fide dispute that they are owed the wages they seek to recover, and Defendants have not argued that such a dispute exists. (Compl. ¶ 116; see Mot. Default. J. at 14). Plaintiffs further allege various "significant consequences" that flowed from their underpayment or lack of payment. All Plaintiffs report feeling stress and anxiety, and in one case insomnia, due to not being able to pay bills on time, and some were prescribed anti-anxiety and anti-depression medications as a result. (Okoniha Decl. ¶ 45; Ouzts Decl. ¶ 45; Koroma Decl. ¶ 44; Prempeh Decl. ¶ 45; Little Decl. ¶ 44). Multiple Plaintiffs also state that they have had to pay for bills and necessities with credit cards, loans, and cash advances that incur interest. (Ouzts Decl. ¶ 45; Koroma Decl. ¶¶ 44–48; Prempeh Decl. ¶ 45).

Plaintiffs also report individualized consequences. Defendants' failure to pay Plaintiffs left Okoniha unable to fulfill her cultural duty of paying for her father's burial after he passed. (Okoniha Decl. ¶ 45). She had to use her savings and borrow money, causing guilt and embarrassment. (Id.). Okoniha also owes college tuition and fees, including nearly $2,000 in late fees, and she is unable to re-enroll until those outstanding charges are paid. (Id.). Ouzts was unable to pay her car payments, and her car was repossessed in December 2025. (Ouzts Decl. ¶ 45). Koroma has incurred significant overdraft and late fees. (Koroma Decl. ¶¶ 45–48). Prempeh was late on her rent payments and had to borrow money from family and friends. (Prempeh Decl. ¶ 45). Little also was late on her rent payments and was evicted in March 2025. (Little Decl. ¶ 44). She has accrued significant hotel bills while looking for a new home and has faced difficulties securing housing due to the eviction. (Id.). Her bank also closed her account due to late payments. (Id.).

Based on Plaintiffs' declarations of the consequences they have faced as a result of Defendants' failure to pay them, the Court finds that Plaintiffs are entitled to recover treble damages under the MWPCL, resulting in total damages of:

- Okoniha – ($15,480 + $8,280) x 3 = $71,280

- Little – ($9,585 + $2,880) x 3 = $37,395

- Ouzts – ($2,497.50 + $1,957.50) x 3 = $8,085

- Prempeh – ($5,422.50 + $1,164.37) x 3 = $19,760.61

- Koroma – ($5,613.75 + $39.38) x 3 = $16,959.39

Compare Avila, 2022 WL 17094583, at *5 (awarding treble damages under MWPCL where plaintiffs provided declarations demonstrating consequential damages resulting from nonpayment of wages), with Albanez, 2016 WL 894617, at *3 (declining to award damages under MWPCL because plaintiff put forth no evidence showing he suffered consequential damages).

## B.        Motion for Attorneys' Fees & Costs

Turning next to Plaintiffs' Motion for Attorneys' Fees and Costs, Plaintiffs assert that in litigating this case, they have incurred attorneys' fees in the amount of $45,423 and costs totaling $654. (Mem. Supp. Mot. Att'ys' Fees & Costs ["Mot. Att'ys' Fees"] at 4, ECF No. 19-1). As support, Plaintiffs provide charts on counsels' rates and hours worked on this case, (see id. at 4–6), and filed the declarations of (1) Stephen Lebau, a partner at Lebau & Neuworth, LLC ("L&N"); (2) Devan Wang, an associate at L&N; and (3) Andrew D. Freeman, a partner at Brown, Goldstein & Levy, (see ECF Nos. 19-2–19-4).

The FLSA, MWHL, and MWPCL all allow a prevailing plaintiff to recover reasonable attorneys' fees and costs from the defendant. See 29 U.S.C. § 216(b); Md. Code Ann., Lab. & Empl. §§ 3-427(d), 3-507.2(b). A plaintiff who obtains a default judgment is a "prevailing plaintiff" and is thus entitled to reasonable attorneys' fees and costs under these statutes. See Aguirre-Amaya v. Medpacific Flavors, Inc., No. DLB-21-2143, 2024 WL 4732776, at *1 (D.Md. Nov. 8, 2024).

The Supreme Court has established a method, commonly called the "lodestar," for determining a reasonable fee. Hensley v. Eckerhart, 461 U.S. 424, 434 (1983). The starting point in the lodestar calculation is "the number of hours reasonably expended on the

15

litigation multiplied by a reasonable hourly rate." Id. In addition, the United States Court

of Appeals for the Fourth Circuit has directed courts to consider these twelve factors when

calculating the lodestar amount:

> (1) the time and labor expended; (2) the novelty and difficulty
> of the questions raised; (3) the skill required to properly
> perform the legal services rendered; (4) the attorney's
> opportunity costs in pressing the instant litigation; (5) the
> customary fee for like work; (6) the attorney's expectations at
> the outset of the litigation; (7) the time limitations imposed by
> the client or circumstances; (8) the amount in controversy and
> the results obtained; (9) the experience, reputation and ability
> of the attorney; (10) the undesirability of the case within the
> legal community in which the suit arose; (11) the nature and
> length of the professional relationship between attorney and
> client; and (12) attorneys' fees awards in similar cases.

Robinson v. Equifax Info. Servs., 560 F.3d 235, 243–44 (4th Cir. 2009) (citation omitted).

The Court is not required to analyze each factor individually or even examine every factor

but may instead consider the factors as a whole. See Martin v. Mecklenburg Cnty., 151

F.App'x. 275, 283 (4th Cir. 2005). "[T]rial courts need not, and indeed should not, become

green-eyeshade accountants." Fox v. Vice, 563 U.S. 826, 838 (2011). Instead of seeking

"auditing perfection," the essential goal of fee-shifting "is to do rough justice." Id.; De

Paredes v. Zen Nails Studio LLC, 134 F.4th 750, 753 (4th Cir. 2025). Therefore, a court

"may take into account their overall sense of a suit, and may use estimates in calculating

and allocating an attorney's time." Fox, 563 U.S. at 838. Ultimately, the plaintiff has the

burden of demonstrating that the requested fees are reasonable. Jones v. Dancel, 792 F.3d

395, 404 (4th Cir. 2015).

16

Here, the Court is satisfied that the number of billable hours that Plaintiffs' counsel report for fee recovery is reasonable. Plaintiffs seek to recover fees for 68.1 hours of work on this litigation that involved unpaid straight time and overtime compensation over the course of several months and implicated both state and federal law. (Mot. Att'ys' Fees at 4–6, 9; Compl. ¶¶ 46–50, 78–135). While this matter did not proceed to discovery, counsels' billing chart shows that the requested billable hours in this case relate to the Complaint and Plaintiffs' successful Motions: 29 hours on case development and the Complaint stage; 33.3 hours on the successful Motions for clerk's entry of default and for default judgment, which involved preparing declarations and gathering timesheets for five Plaintiffs; and 5.8 hours on the Motion for Attorneys' Fees and Costs. (Mot. Att'ys' Fees at 4–6); see Henderson v. S & K Sec. Consultants, Inc., No. LKG-21-2484, 2025 WL 2444031 (D.Md. Aug. 25, 2025) (finding 111.2 hours reasonable in FLSA matter resolved through motion for default judgment). Additionally, the attorney with the lower hourly rate, Devan Wang, performed most of the work on the Motions, and the requested hours do not include work performed by counsels' legal assistant, Brooks Feldman. (Mot. Att'ys' Fees at 5–6, 9).

The Court also is satisfied that the hourly rates sought in this case are reasonable. Plaintiffs state that "[t]he hourly rates charged by Plaintiffs' attorneys are consistent with their customary fees and prevailing market rates for similar work in the District of Maryland." (Id. at 7). In this regard, Stephen Lebau, a founding partner of L&N who has been practicing law for over thirty-five years, represents to the Court that L&N uses "the Guidelines Regarding Hourly Rates as stated in Appendix B to the Local Rules and the

Fitzpatrick Matrix." (Lebau Decl. ¶ 13, ECF No. 19-2). Based on those Guidelines, Lebau charges an hourly rate of $726.30, and Wang, an associate at L&N who has been practicing law for thirteen years, charges an hourly rate of $598. (Id.; Wang Decl. ¶ 8, ECF No. 19-3). These rates are below the 2023 rates in the Fitzpatrick Matrix for attorneys with over thirty-five and thirteen years of experience, respectively.[10] Lebau and Wang based their requested rates on the Fitzpatrick Matrix's 2023 rates to account for inflation and reduced their hourly rates by 10% to account for the differences between the markets in Washington, D.C. and Maryland. (Mot. Att'y's Fees at 7).

Given these representations and the record before the Court, the Court is satisfied that the requested hourly rates in this case fall within the prevailing hourly rates for similarly qualified and experienced attorneys in the Maryland area. See Blum v. Stenson, 465 U.S. 886, 895 (1984) ("The statute and legislative history establish that 'reasonable fees' under [42 U.S.C.] § 1988 are to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel."). The Court also finds persuasive the declaration of Andrew D. Freeman, a partner at the Baltimore-based law firm of Brown, Goldstein & Levy, who attests that:

> I am familiar with Lebau & Neuworth's reputation and experience in representing plaintiffs in seeking compensation for unpaid wages. Lebau & Neuworth is one of the top firms in the country in this field. Mr. Lebau and I have often consulted

---

[10] The Fitzpatrick Matrix, https://www.mdd.uscourts.gov/sites/mdd/files/fitzpatrick-matrix.pdf, (last visited June 21, 2026) (reporting hourly rates of $807 and $664 in 2023 for attorneys with over thirty-five and thirteen years of experience, respectively).

> with each other regarding employment law litigation strategy and tactics.
>
> The Plaintiffs' case here presented a variety of challenges, all of which Lebau & Neuworth handled skillfully and expeditiously, and the result they obtained for the Plaintiffs was superb. I have been informed that there were no contemporaneous time records of hours worked and there had been a change in the ownership of the direct employer. Lebau & Neuworth obtained the agreement of the employer to use a few GPS records as a basis for the calculation of the owed overtime. The Plaintiffs' recovery of 2.75 times the amount of wages owed to them without any formal discovery was exceptional.
>
> Based upon my knowledge and expertise as described above, it is my opinion that the rates sought by Plaintiffs' counsel in this case are reasonable, reflecting rates at or below the value of services by lawyers of their experience and caliber in the Baltimore market.

(Freeman Decl. ¶¶ 11–13, ECF No. 19-4).

Lastly, Plaintiffs request $654 in costs for "filing the lawsuit, service of process, and legal research," but they provide no documentation of such costs. (Mot. Att'ys' Fees at 4). The Court, therefore, will deny this request. See Glen v. L. Off. of W.C. French, No. ELH-11-927, 2012 WL 181496, at *6 (D.Md. Jan. 19, 2012) (declining to award costs because plaintiff provided no proof of costs), report and recommendation adopted, No. ELH-11-00927, 2012 WL 425870 (D.Md. Feb. 8, 2012).

### III.     CONCLUSION

For the foregoing reasons, the Court will grant Plaintiffs' Motion for Default Judgment (ECF No. 18) and grant in part and deny in part Plaintiffs' Motion for Attorneys' Fees and Costs (ECF No. 19). A separate Order follows.

Entered this 3rd day of June, 2026.


_____/s/_____

George L. Russell, III
Chief United States District Judge
